# United States Court of Appeals for the Federal Circuit

06-5039

MICHAEL and MELISSA MARKOVICH,
Parents of Ashlyn M. Markovich,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

Mark L. Krueger, Greenhalgh Krueger & Hernandez, SC, of Baraboo, Wisconsin, argued for petitioners-appellants.

Lynn E. Ricciardella, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, Timothy P. Garren, Director, Vincent J. Matanoski, Acting Deputy Director, and Catharine E. Reeves, Acting Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

06-5039

MICHAEL and MELISSA MARKOVICH,
Parents of Ashlyn M. Markovich,

Petitioners-Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

_____

DECIDED:  February 20, 2007
_____

Before MICHEL, <u>Chief Judge</u>, RADER and LINN, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

Michael and Melissa Markovich (collectively the "Markoviches") appeal from a final decision of the United States Court of Federal Claims ("Court of Federal Claims"). <u>Markovich v. Sec'y of Health & Human Servs.</u>, 69 Fed. Cl. 327, 336 (Fed. Cl. 2005) ("<u>Final Decision</u>").  That decision affirmed the Special Master's report, which denied the petition filed on behalf of the Markoviches' daughter, Ashlyn M. Markovich ("Ashlyn"), for compensation under the National Childhood Vaccine Injury Act ("the Vaccine Act") because it was time-barred.  <u>See</u> <u>Markovich v. Sec'y of Health & Human Servs.</u>, No. 03-2015V (Fed. Cl. July 22, 2005) ("<u>Special Master Report</u>").  We affirm.

## I.  BACKGROUND

On July 10, 2000, when she was approximately two months old, Ashlyn received a series of vaccinations, including vaccinations against diphtheria, tetanus (commonly

known as lockjaw), pertussis (commonly known as whooping cough), polio, and haemophilus influenzae type B. That same day, the Markoviches observed that Ashlyn began to rapidly blink her eyes, events that we refer to herein as the "eye blinking episodes." The Markoviches allege that, at that time, they were not concerned by the eye blinking episodes because they thought the episodes were merely an indication that Ashlyn was tired.

The eye-blinking episodes continued after July 10, 2000. On August 30, 2000, Ashlyn became unresponsive for approximately twenty minutes, during which time all of Ashlyn's extremities jerked aggressively. The Markoviches immediately called 911. Ashlyn was taken to the Fairview Ridge Emergency Room, where she was diagnosed with having suffered a grand-mal seizure. Another seizure occurred about two weeks later, on September 14, 2000. Ashlyn continued to suffer seizures almost daily, sometimes experiencing three or more seizures a day, including seizures documented on October 11, 14, 18, 20, 21, and 22, 2000; November 17, 2000; January 8 and 25, 2001; March 3 and 29, 2001; April 2, 3, and 17, 2001; June 8, 2001; July 10, 17, and 31, 2001; August 11 and 24, 2001; September 17, 2001; October 5 and 15, 2001; November 8, 2001; and December 7, 2001. Final Decision, 69 Fed. Cl. at 328-29. Ashlyn also experienced seizures that consisted of eye blinking episodes between 150 and 500 times per day. Melissa Markovich Aff. ¶ 7. Throughout this entire time, beginning with her hospitalization at the Fairview Ridge Emergency Room, Ashlyn was examined at several different hospitals by numerous doctors. Nevertheless, the seizures persisted.

06-5039                                    2

On January 29, 2002, Ashlyn was admitted to the Mayo Clinic "to determine whether a single focus of seizure onset is likely that would be susceptible to surgical removal." Final Decision, 69 Fed. Cl. at 329. During that evaluation, a neurologist diagnosed Ashlyn as having experienced "four types of seizures: (1) repeated eye blinking; (2) clonic movement of the face, arm, and leg; (3) generalized seizures with or without focal onset; and (4) partial motor seizures." Id. at 330 (emphasis added). Following the evaluation, the neurologist discussed treatment options with Ms. Markovich.

On August 29, 2003, the Markoviches filed a petition for compensation under the Act, alleging that Ashlyn suffered the seizures as a result of her vaccination. On January 27, 2004, the Special Master held a status conference, indicating that an "Onset Hearing" was necessary in order to determine whether the Markoviches' petition was time-barred as having been filed more than three years after the date on which the first symptom or manifestation of onset of the injury occurred. On November 5, 2004, the Special Master held the Onset Hearing to determine whether the onset of the seizures occurred on July 10, 2000, the date of Ashlyn's initial eye blinking episode, or on August 30, 2000, the date when Ashlyn was hospitalized and diagnosed with having a seizure.

On July 22, 2005, the Special Master found that the date of the occurrence of the first symptom or manifestation of onset of the seizures was July 10, 2000, and found that the Markoviches' petition was time-barred pursuant to 42 U.S.C. § 300aa-16(a)(2) because the petition was filed on August 29, 2003, more than three years later. See Special Master Report, slip op. at 24. Accordingly, the Special Master dismissed the

petition for lack of jurisdiction. Id. The Court of Federal Claims affirmed the Special Master's decision on October 31, 2005. Final Decision, 69 Fed. Cl. at 335-36.

The Markoviches timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A. Standard of Review

Under the Vaccine Act, the Court of Federal Claims reviews the Special Master's decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 42 U.S.C. § 300aa-12(e)(2)(B). We effectively review the Special Master's decision under the same standard, since we review the trial court's legal determination de novo as to whether the Special Master acted in a manner not in accordance with the law. Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1277-78 (Fed. Cir. 2005) (citing Hines v. Sec'y of Health & Human Servs., 940 F.2d 1518, 1524 (Fed. Cir. 1991)). While we owe no deference to either the Special Master or the trial court on questions of law, Whitecotton v. Sec'y of Health & Human Servs., 81 F.3d 1099, 1106 (Fed. Cir. 1996), we review factual findings for clear error, Hines, 940 F.2d at 1523.

### B. Analysis

The Vaccine Act was established to increase the safety and availability of vaccines. See 42 U.S.C. § 300aa-1. Under the Vaccine Act, Congress established a Vaccine Injury Compensation Program through which claimants could petition to receive compensation for vaccine-related injuries. See § 300aa-10(a). Congress included a table in the Vaccine Act that lists injuries that may occur as a result of the administration

of vaccines. See § 300aa-14 ("Vaccine Injury Table"). In relevant part, the Vaccine Act sets forth:

> In the case of . . . a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

§ 300aa-16(a)(2).

It is not disputed that the vaccines that were administered to Ashlyn are listed in the Vaccine Injury Table and that Ashlyn suffers from seizure disorders as a result of the administration of such vaccines. The question in this case is what standard should be applied in determining the date of "the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury," id., and whether the eye blinking episode that occurred on July 10, 2000 meets that standard. If so, the Markoviches' petition is time-barred, having been filed more than 36 months after the July 10, 2000 episode.

The Markoviches argue that the standard for statute of limitations purposes should be a subjective one, focusing on the particular view of a specific parent. The Markoviches suggest that the limitations period was not triggered until they knew that "any injury or symptom had occurred," or "there [was] a reasonable basis of an injury that [is] separate, distinct and apart from a normal activity." Br. for Appellant 17-18. The Markoviches assert that the eye blinking episode that pre-dated the seizure diagnosis cannot be considered a triggering event because it was an everyday event, which they thought meant only that Ashlyn was tired. The Markoviches argue that the

triggering event for statute of limitations purposes should be August 30, 2000, when, for the first time, the Markoviches became aware of an injury. The Markoviches also urge that we follow the logic of Setnes v. United States, 57 Fed. Cl. 175 (2003), which, according to the Markoviches, establishes that there must be a recognizable sign of a vaccine injury before there is a manifestation of onset of injury that would trigger the statute of limitations. The Markoviches argue that, pursuant to the logic of Setnes, the first "manifestation of onset" (i.e., the grand-mal seizure suffered on August 30, 2000), but not the first "symptom" (i.e., the eye blinking episode on July 10, 2000), should start the statute of limitations because the eye blinking symptom could not reasonably alert the Markoviches that anything was wrong with Ashlyn.

The government responds that the standard for statute of limitations purposes should be objective, focusing not on a particular parent's view but on recognized standards of the medical community. The government argues that, using an objective standard, the Court of Federal Claims correctly held that the July 10, 2000 eye blinking episode constituted the first symptom of the seizure disorder, triggering the running of the limitations period. The government points out that the Markoviches' own expert testimony proves that the eye blinking episode constituted the onset of the seizure disorder. The government also asserts that the Markoviches' reliance on the Setnes decision, which is not binding on this court, is misplaced and distinguishable.

We begin our analysis with the language of the Vaccine Act, which expressly bars a petition for compensation that is filed more than 36 months after the date of the occurrence of the "first symptom or manifestation of onset" of injury. See 42 U.S.C. § 300aa-16(a)(2). Under the plain language of the Vaccine Act, the "first symptom or

manifestation of onset" of injury means that either a "symptom" or a "manifestation of onset" can trigger the running of the statute, whichever is first. Because Congress is presumed to have intended a disjunctive meaning by using the disjunctive word "or," we interpret the words "first symptom" and "manifestation of onset" as referring to two different forms of evidence of injury. See, e.g., Shalala v. Whitecotton, 514 U.S. 268, 274 (1995) (emphasizing that the Vaccine Act refers to either a "symptom" or a "manifestation of onset" and that either form of evidence may show the onset of the injury). This disjunctive interpretation is consistent with the use of the word "or" to distinguish the dissimilar meaning of the words "symptom" and "manifestation of onset" as used in the Vaccine Act. There is a difference between a "symptom" and "manifestation of onset." A symptom may be indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury. A manifestation of onset is more self-evident of an injury and may include significant symptoms that clearly evidence an injury. For example, in this case, the eye-blinking episode was a symptom of a seizure disorder without any diagnosis, while the grand-mal seizure of August 30, 2000 was a manifestation of onset of a seizure disorder.

In Setnes, the Court of Federal Claims held that "where there is no clear start to the injury, such as in cases involving autism, prudence mandates that a court addressing the statute of limitations not hinge its decision on the occurrence of the first symptom." Setnes, 57 Fed. Cl. at 179 (internal quotation marks omitted). The Court of Federal Claims concluded that, in cases where symptoms are hard to recognize, courts should look instead to the manifestation prong. The court in Setnes was concerned with

the very subtle symptoms attributed with autism that can be easily confused with typical child behavior, and it distinguished the terms "symptom" and "manifestation," construing the latter as "synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident." Id. at 179-80. The Setnes court concluded that

> in a situation such as that before the court, where the symptoms of autism develop "insidiously over time" and the child's behavior cannot readily be connected to an injury or disorder, the court may rely on the child's medical or psychological evaluations for guidance in ascertaining when the "manifestation of onset" occurred.

Id. at 181.

A significant problem with the rationale of Setnes is that it effectively reads the Vaccine Act as if the statute of limitations were not triggered until there was appreciable evidence showing a symptom and manifestation of the injury. However, the Vaccine Act states that the statute of limitations is triggered by the "first symptom or manifestation of onset." 42 U.S.C. § 300aa-16(a)(2) (emphasis added). The use of the words "first" and "or" require that the statute of limitations commence with whichever event (i.e., symptom or manifestation of onset) occurs first. The statute does not require that both events occur before the running of the limitations period can commence.

The Setnes construction also suggests that a subtle symptom or manifestation of onset of the injury, such as a symptom that would be recognizable to the medical profession at large but not to the parent, would not be sufficient to trigger the running of the statute. Yet the Vaccine Act has consistently been interpreted as including subtle symptoms or manifestations of onset of the injury within the ambit of evidence that triggers the running of the statute:

Turning to the issue of accrual of the statute of limitations in Section 16(a)(2), the terms of the Vaccine Act demonstrate that Congress intended the limitations period to commence to run prior to the time a petitioner has actual knowledge that the vaccine recipient suffered from an injury that could result in a viable cause of action under the Vaccine Act. First, a particular symptom or manifestation, such as a seizure, often can result from a variety of different conditions. Hence, a petitioner typically will recognize that a particular symptom constitutes the first symptom or manifestation of the onset of a certain injury only with the benefit of hindsight, after a doctor makes a definitive diagnosis of the injury. By commencing the running of the limitations period on the date the first symptom or manifestation of the onset occurs, Congress chose to start the running of the statute before many petitioners would be able to identify, with reasonable certainty, the nature of the injury.

Brice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 474, 477 (1996), aff'd on other grounds, 240 F.3d 1367 (Fed. Cir. 2001). In Brice, we held that equitable tolling is not available for claims arising under § 300-16(a)(2), reasoning that "the statute of limitations here begins to run upon the first symptom or manifestation of the onset of injury, even if the petitioner reasonably would not have known at that time that the vaccine had caused an injury." 240 F.3d at 1373; see also Sharpnack v. Sec'y of Health & Human Servs., No. 90-983V, 1992 WL 167255, at *2 (Cl. Ct. Special Master June 29, 1992), aff'd, 27 Fed. Cl. 457 (1993), aff'd, 17 F.3d 1442 (Fed. Cir. 1994) (table) (holding that "in many Vaccine Program cases the injuries are first manifested as subtle signs and seizures of less complicated nature, e.g., seizures lasting less than 30 minutes or seizure activity so subtle as to be unrecognized at their onset").

The Supreme Court, in <u>Whitecotton</u>, interpreted the terms "first symptom or manifestation of onset," as that language is used in §§ 300aa-11(c)(1)(C)(i)[1] and 300aa-14(a)[2] of the Act, to include subtle symptoms. Although these sections deal with causation and the temporal relationship of the administration of the vaccine and evidence of injury, the relevant language of those sections is virtually identical to the relevant language of § 300aa-16(a)(2) at issue in this case. In <u>Whitecotton</u>, the Court emphasized that the proper focus is on the first evidence of injury, emphasizing that <u>any</u> observable "symptom or manifestation" may be the first evidence of injury. 514 U.S. at 274. The Supreme Court, unlike the Court of Federal Claims in <u>Setnes</u>, did not require that a petitioner appreciate the significance of that evidence. Notably, while the Markoviches contend that the July 10, 2000 eye blinking episode did not start the running of the statute of limitations, they argue that it supports causation, reasoning that "[a]lthough petitioners' experts are using that event [eye blinking on July 10, 2000] to

---

[1]      § 300aa-11(c)(1)(C)(i) provides:
A petition for compensation under the Program for a vaccine-related injury or death shall contain . . . an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table in association with the vaccine . . . and the <u>first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury, or condition or the death</u> occurred within the time period . . . in the Vaccine Injury Table.
42 U.S.C. § 300aa-11(c)(1)(C)(i) (emphasis added).

[2]      § 300aa-14(a) provides:
The following is a table of vaccines, the injuries, disabilities, illnesses, conditions, and deaths resulting from the administration of such vaccines, and the time period in which the <u>first symptom or manifestation of onset or of the significant aggravation of such injuries, disabilities, illnesses, conditions, and deaths</u> is to occur after vaccine administration for purposes of receiving compensation under the Program . . . .
42 U.S.C. § 300aa-14(a) (emphasis added).

support their opinion that the seizure disorder that manifested itself on August 30, 2000, was caused by the vaccination of July 10, 2000, it should not be used against petitioners to support the respondent's argument that the statute of limitations began to run on July 10, 2000." The statutory language of the causation provision is the same as the statute of limitations provision. There is no principled basis to conclude that "first symptom or manifestation of onset" should be construed one way for causation and another way for the statue of limitations.

Setnes is also factually distinguishable from the Markoviches' case. The eye blinking episodes here were not so readily confused with typical child behavior over the course of the limitations period as were the symptoms of autism in Setnes. The eye blinking episodes in this case began promptly after the vaccination and were connected to the injury of seizure disorder within ample time to have filed a timely claim. As discussed above, the January 29, 2002 report from the Mayo Clinic established that "repeated eye-blinking" was not only a symptom of seizure activity but also manifested one type of seizure activity. The record also reflects that, as of September 20, 2001, Ms. Markovich understood that Ashlyn's eye blinking was seizure activity. See Special Master Report, slip op. at 4. Moreover, the Markoviches' own medical expert, Dr. Corbier, testified at the Onset Hearing that:

> [T]he eye blinking could have either been some small seizures, subtle seizures if you will, or there is also the possibility that it could have been some type of brain dysfunction.
>
> There is no question that [when the eye blinking episode occurred] there was a mild seizure . . . .

> [T]here was some type of dysfunction of some sort that likely started on July 10th, leading to a documented seizure on August 30th.

Similarly, Dr. Corbier's expert report states that "the patient's onset of possible seizures (paroxysms of rapid eye blinking) . . . occurred within 24 hours following a set of immunizations . . . ." Thus, as distinguished from <u>Setnes</u>, the eye blinking episodes were not normal child behavior, were part of the same injury that culminated on August 30, 2000 in a grand-mal seizure, and would have at the very least raised Dr. Corbier's suspicions.

We have previously explained that the Vaccine Act's statute of limitations must be strictly and narrowly construed because it is "a condition on the waiver of sovereign immunity by the United States, and courts should be careful not to interpret [a waiver] in a manner that would extend the waiver beyond that which Congress intended." <u>Brice</u>, 240 F.3d at 1370. A subjective standard that focuses on the parent's view would result in an uneven and perhaps overly broad application of the statute of limitations dependent entirely on the subjective perceptions of lay persons having widely varying degrees of medical awareness or training. On the other hand, an objective standard that focuses on the recognized standards of the medical profession at large treats petitioners equally, without regard to their individual degree of medical awareness. An objective standard is consistent with the statutory requirement that the <u>first</u> symptom <u>or</u> manifestation of onset of the injury begins the running of the statute of limitations, as well as the cases discussed <u>supra</u> that have consistently construed the Vaccine Act to include subtle symptoms that would be recognizable to the medical profession at large but not necessarily to the parent. <u>See generally</u> <u>Goetz v. Sec'y Health & Human Servs.</u>,

45 Fed. Cl. 340, 342 (1999) (following <u>Brice</u> and holding that a vaccine claim is based on "the occurrence of an event recognizable as a sign of a vaccine injury <u>by the medical profession at large</u>, not the diagnosis that actually confirms such an injury in a specific case" (emphasis added)), <u>aff'd</u>, 4 Fed. Appx. 827 (Fed. Cir. 2001).

For all of the reasons discussed above, we hold that "the first symptom or manifestation of onset," for the purposes of § 300aa-16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large. Because the testimony of Dr. Corbier and others confirms that Ashlyn's eye blinking episode on July 10, 2000 was objectively recognizable by the medical profession at large as constituting the first evidence of vaccine injury onset, <u>i.e.</u>, the first symptom of injury, and because the Markoviches filed their petition on August 29, 2003, more than 36 months after the initial symptoms, the petition is time-barred under § 300aa-16(a)(2).

CONCLUSION

For the foregoing reasons, the <u>Final Decision</u> is

<u>AFFIRMED</u>.

COSTS

No costs.