# United States Court of Appeals for the Federal Circuit

2009-5090


MARY DARIN WILKERSON, as mother of her son,
OTTO WILKERSON,

Petitioner-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.


Kevin P. Conway, Conway, Homer & Chin-Caplan, P.C., of Boston, Massachusetts, argued for petitioner-appellant. On the brief was Ronald C. Homer.

Traci R. Patton, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Tony West, Assistant Attorney General, Timothy P. Garren, Director, Mark W. Rogers, Deputy Director, and Gabrielle M. Fielding, Assistant Director.

Appealed from: United States Court of Federal Claims

Senior Judge Robert H. Hodges, Jr.

# United States Court of Appeals for the Federal Circuit

2009-5090

MARY DARIN WILKERSON, as mother of her son,
OTTO WILKERSON,

Petitioner-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellee.

Appeal from a judgment of the United States Court of Federal Claims in Case No. 05-VV-232, Senior Judge Robert H. Hodges, Jr.

_____

DECIDED:   January 27, 2010

_____

Before MAYER, FRIEDMAN, and GAJARSA, <u>Circuit Judges</u>.

FRIEDMAN, <u>Circuit Judge</u>.

This appeal challenges the decision of the Court of Federal Claims that affirmed its Special Master's rejection of a petition for compensation under the National Childhood Vaccine Injury Act ("Vaccine Act") as untimely.  We affirm.

I

Otto Wilkerson, the son of the appellant Mary Darin Wilkerson, was born on May 30, 1997.  He received his first vaccination on that date and by September 1998 had had multiple vaccinations.

By the end of 1999, Wilkerson had begun receiving complaints about Otto's misbehavior and his relationships with other people, including children. Otto reportedly had difficulty playing well with other children, disturbed class and hurt classmates. When Otto attended preschool in 2001, he reportedly disturbed class, refused to respond to or obey his teachers' instructions, sit still or listen.

By 2003, a physician treating Otto suspected that he may have Attention Deficit Hyperactivity Disorder ("ADHD") and referred him to a clinic for testing. A licensed clinical social worker there concluded that he "clearly" met the diagnostic criteria for the disorder. A pediatrician corroborated this diagnosis in January 2004.

On February 10, 2005, Wilkerson filed in the Court of Federal Claims a petition for compensation under the Vaccine Act. She alleged that Otto suffered mercury toxicity and ADHD as a result of the vaccinations he had received during his first six months. The trial under a petition for compensation for vaccine-related injuries is held before a Special Master of the Court of Federal Claims. 42 U.S.C. § 300aa-12(d). The Secretary of Health and Human Services ("the Secretary"), who is the respondent in such cases, § 300aa-12(b)(1), moved to dismiss the petition as untimely under the statute, which bars such a petition if filed "after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset" of a vaccine-related injury. § 300aa-16(a)(2).

Each party submitted a physician's expert report addressing the date of onset of Otto's ADHD symptoms. Both medical experts agreed that, more probably than not, those symptoms first appeared on or before November 3, 2001. The Chief Special Master dismissed the petition as untimely, because it was filed on February 17, 2005,

more than thirty-six months after the occurrence of the first symptom or manifestation of onset of Otto's ADHD.

The Court of Federal Claims upheld the Chief Special Master's ruling. The court held that, in <u>Markovich v. Secretary of Health and Human Services</u>, 477 F.3d 1353 (Fed. Cir. 2005), this court ruled that "the event that triggers the running of the statute of limitations is either a symptom or manifestation of onset, whichever occurs first." The court's "CONCLUSION" was: "The parties agreed that November 3, 2001 was the date on which petitioner's symptoms first appeared. Given petitioner's concession, the Chief Special Master had no choice, in light of <u>Markovich</u>, to rule that he lacked jurisdiction to consider the case on the merits." <u>Wilkerson v. Sec'y of Health and Human Servs.</u>, 2009 WL 1583527, at *2 (Ct. Fed. Cl. Apr. 2, 2009).

II

A. We agree with the Court of Federal Claims and the Chief Special Master that <u>Markovich</u> controls this case and that under it the Chief Special Master correctly dismissed the petition as untimely.

The governing statutory time limit in this case states:

> [I]f a vaccine-related injury occurred as the result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury.

§ 300aa-16(a)(2).

In other words, for the Chief Special Master to have had jurisdiction in this case, the petition for compensation must have been filed within thirty-six months of "the date

of the occurrence of the first symptom or manifestation of onset" of "a vaccine-related injury."

In Markovich, the petitioner argued that the standard for determining when the limitations period begins to run "should be a subjective one, focusing on the particular view of a specific parent." 477 F.3d at 1356. This court rejected that theory and instead adopted "an objective standard that focuses on the recognized standards of the medical profession at large," which "treats petitioners equally, without regard to their individual degree of medical awareness." Id. We stated that "[u]nder the plain language of the Vaccine Act, the 'first symptom or manifestation of onset' of injury means that either a 'symptom' or a 'manifestation of onset' can trigger the running of the statute, whichever is first." Id. at 1357. The court "[h]eld that 'the first symptom or manifestation of onset,' for the purposes of § 300aa-16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large." Id. at 1360.

Under these standards, the Court of Federal Claims and the Chief Special Master correctly held that Wilkerson's petition for Vaccine Act injury compensation was untimely because it was filed more than thirty-six months after "the date of the occurrence of the first symptom . . . of such injury." The parties' medical experts agreed that the first symptom of Otto's ADHD occurred on or before November 3, 2001. The petition for compensation was not filed until February 17, 2005, more than thirty-nine months after that first symptom had occurred. On its face, the filing was untimely.

B. The grounds upon which Wilkerson seeks to distinguish or avoid Markovich are unpersuasive.

Wilkerson contends that Otto's "condition, ADHD, is a condition that requires a 'manifestation of onset' event to trigger the statute of limitations" and that its first symptom is not sufficient. The argument is refuted by the ruling in Markovich that "the 'first symptom or manifestation of onset' of injury means that either a 'symptom' or a 'manifestation of onset' can trigger the running of the statute, whichever is first." Id. at 1357. We discern nothing in the Vaccine Act that supports such a limitation on the Act's clear and broad language that "either" the occurrence of the first symptom "or" manifestation of onset is sufficient.

Wilkerson repeats the argument by urging us to follow the ruling of the Court of Federal Claims in Setnes v. United States, 57 Fed. Cl. 175, 179 (2003), that "where there is no clear start to the injury . . . prudence mandates that a court addressing the statute of limitations not hinge its decision on the occurrence of the first symptom." Markovich, however, discussed at length and rejected that Setnes ruling because:

> it effectively reads the Vaccine Act as if the statute of limitations were not triggered until there was appreciable evidence showing a symptom and manifestation of the injury. However, the Vaccine Act states that the statute of limitations is triggered by the "first symptom or manifestation of onset." 42 U.S.C. § 300aa-16(a)(2) (emphasis added). The use of the words "first" and "or" require that the statute of limitations commence with whichever event (i.e., symptom or manifestation of onset) occurs first.

477 F.3d at 1358.

Wilkerson also argues that the reference in Markovich to "the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large" requires that such recognition be contemporaneous with the "first event" itself, and that hindsight recognition is impermissible. That statement in Markovich, however, was

made to explain the court's rejection of a subjective standard for determining when the limitations period began to run based on the parent's perception of when that occurred, and adopting instead an objective standard based on the medical profession's recognition of when that occurred. We do not read Markovich as requiring in each case a showing of the date on which the medical profession at large had such a recognition. Since both medical experts in the present case agreed on the date on which Otto's ADHD symptoms appeared, it was reasonable to conclude that that date reflected the consensus of the medical profession at large about when those symptoms first were recognizable. The fact that such recognition may have occurred some time after the symptoms first occurred does not undermine the medical judgment upon which the decision in this case was based. Moreover, the Act's time for filing runs from "the date of the occurrence of the first symptom or manifestation of onset," not the date of its recognition.

Finally, Wilkerson argues that the legislative history showing the underlying policy objectives of the Vaccine Act support her position. Those considerations, however, do not negate the clear statutory language that Markovich applied as written. Wilkerson's argument also ignores the court's recognition in Markovich that "the Vaccine Act's statute of limitations must be strictly and narrowly construed because it is 'a condition on the waiver of sovereign immunity by the United States, and courts should be careful not to interpret [a waiver] in a manner that would extend the wavier beyond that which Congress intended.'" Id. at 1360 (citation omitted).

In sum, Markovich means exactly what it said: "the first symptom or manifestation of onset . . . is the first event objectively recognizable as a sign of a vaccine injury by the

medical profession at large." Id. Markovich compels the conclusion that Wilkerson's petition under the Vaccine Act was untimely because it was filed more than thirty-six months after the occurrence of the first symptom of Otto's injury.

CONCLUSION

The judgment of the Court of Federal Claims sustaining the dismissal of the petition as untimely is

AFFIRMED.