MICHEL, Chief Judge.
Petitioner-appellant Melissa Cloer, M.D., appeals the decision of the United States Court of Federal Claims. Cloer v. Sec’y of Health & Human Servs., 85 Fed.Cl. 141 (2008). The decision affirmed the Chief Special Master’s report, which denied Dr. Cloer’s petition for compensation under the Vaccine Injury Compensation Program (“Vaccine Program”) established by the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 (“Vaccine Act”), because it was time-barred. See Cloer v. Sec’y of Dep’t of Health & Human Servs., No. 05-1002V (Fed.Cl. May 15, 2008).
This case presents the question of whether the Vaccine Act’s statute of limitations, 42 U.S.C. § 300aa-16(a)(2), begins running where a claimant experiences a symptom of injury, but where the medical community at large does not recognize that the symptom is related to a vaccine and the claimant has not received medical information suggesting a connection. We hold that the statute of limitations does not begin running in such cases. Thus, we reverse and remand.
*1343 I. BACKGROUND
Plaintiff-appellant Melissa Cloer is a physician who is disabled due to multiple sclerosis (“MS”). She had no significant medical issues prior to exhibiting symptoms of demyelinating disease. Dr. Cloer received three Hepatitis B (“Hep-B”) immunizations at the University of Missouri Student Health Center. After her first two vaccinations on September 3, 1996 and November 11, 1996, Dr. Cloer experienced some numbness and tingling. Dr. Cloer received her third Hep-B vaccination on April 3, 1997.
About a month after her final vaccination, Dr. Cloer began to experience an electric-like shock sensation in her spine. Medical professionals call this sensation a Lhermitte sign, a common symptom of MS. In September and October 1997, petitioner also lost sensation in her left arm and left hand. Dr. Cloer consulted with her primary care physician, Dr. Pereira, who prescribed Motrin. The symptoms resolved over a short period of time.
When Dr. Cloer experienced additional problems in 1998, she returned to Dr. Per-eira. Dr. Cloer underwent further testing, including a magnetic resonance imaging (MRI) scan on May 12, 1998. The MRI scan indicated that possible diagnoses for Dr. Cloer included MS, lyme disease, acute disseminating encephalomyelitis, or other demyelinating processes. A May 15, 1998 medical record specifically noted, “Probable early inactive non-progressive CNS [central nervous system] demylination/MS.... ”
In 1998, Dr. Cloer was referred to a neurologist, Dr. Meyer, with a specialty in the diagnosis and treatment of MS. Dr. Meyer treated appellant in 1998 for “singular sclerosis” or “early inactive non-progressive CNS demyelinating disease.” Dr. Cloer was given a “provisional” diagnosis of MS on November 26, 2003 by her treating neurologist Dr. Wood subsequent to his obtaining Dr. Cloer’s medical history and the results of an MRI examination.
In May 2004, Dr. Cloer applied for and was awarded monthly Social Security disability benefits due to her medical condition. As part of her eligibility for benefits, James P. Metcalf, M.D., conducted a comprehensive medical examination and noted that appellant “first beg[a]n to have some symptoms consistent with MS in 1997,” although her “symptoms waxed and waned until the fall of 2003 when she beg[a]n to have manifestations of the full blown disease.”
Dr. Cloer first became aware of an association between MS and the Hep-B vaccine when she read an editorial and prospective French study in the September 2004 issue of Neurology. Dr. Cloer reported to the Vaccine Adverse Event Reporting System (VAERS) on October 11, 2004 that she experienced numbness and tingling after her first two Hep-B vaccinations.
On September 16, 2005, Dr. Cloer filed a claim for compensation under the Vaccine Act, alleging that her Hep-B vaccinations caused or significantly aggravated her latent MS condition. On December 1, 2005, respondent-appellee Health and Human Services (“HHS”) moved to dismiss the petition because it was filed after the expiration of the statutorily prescribed limitations period.
Dr. Cloer relied upon affidavits and testimony from Dr. Meyer, a recognized expert in MS. Dr. Meyer explained that when he evaluated Dr. Cloer in 1998 her symptoms were consistent with but not independently diagnostic for clinically definite MS. He noted that symptoms of MS could occur well before a diagnosis of MS is made. Dr. Meyer testified that, in retrospect, the first sign of MS was the Lher-mitte sign that the appellant experienced in 1997.
*1344 Dr. Meyer did not believe, or even consider, that Dr. Cloer had suffered a vaccine injury when he evaluated her in 1998. Dr. Meyer did not become aware of the association between MS and Hep-B immunization until he was contacted by Dr. Cloer’s counsel in late 2005. Dr. Meyer testified that a member of the medical community at large would not have recognized or believed Dr. Cloer had a vaccine injury as of 1999. Having reviewed Dr. Cloer’s prior medical records, Dr. Meyer found no indication of a link between her MS and the Hep-B immunizations before 2004. Dr. Meyer’s testimony was not rebutted by any expert.
In 2007, the Chief Special Master conducted a telephonic hearing to take Dr. Meyer’s testimony. The Chief Special Master issued his decision on May 15, 2008, determining that the first symptom, manifestation of onset, or significant aggravation of Dr. Cloer’s MS was the Lhermitte’s sign she experienced in 1997. Because Dr. Cloer filed her Vaccine Act petition on September 16, 2005, more than 36 months later, the Chief Special Master dismissed the petition as untimely. The Court of Federal Claims affirmed the Chief Special Master’s decision.
Dr. Cloer timely appealed to the Federal Circuit. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
II. DISCUSSION
A.
Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]” 42 U.S.C. § 300aa-12(e)(2)(B); Althen v. Sec’y of Health & Human Servs., 418 F.3d 1274, 1277 (Fed.Cir.2005). We review legal determinations of the Court of Federal Claims de novo. Althen, 418 F.3d at 1278. To the extent that the Court of Federal Claims adopts factual findings made by the special master, we accord them the same deference as the Court of Federal Claims and review them under the arbitrary and capricious standard as provided in the statute. Munn v. Sec’y of the Dep’t of Health & Human Servs. 970 F.2d 863, 870 (Fed.Cir.1992). While we owe no deference to either the special master or the trial court on questions of law, Whitecotton v. Sec’y of Health & Human Servs., 81 F.3d 1099, 1106 (Fed.Cir.1996), we review factual findings for clear error, Hines v. Sec’y of Health & Human Servs., 940 F.2d 1518, 1523 (Fed.Cir.1991).
B.
Congress established the Vaccine Act to increase the safety and availability of vaccines. See 42 U.S.C. § 300aa-1. As part of the Vaccine Act, the Vaccine Program permits claimants to petition to receive compensation for vaccine-related injuries. See § 300aa-100(a). The Vaccine Injury Table lists vaccines that are covered under the Vaccine Act. See §§ 300aa-11(c)(1)(C)(ii), 300aa-14. The Vaccine Injury Table also lists injuries that may arise from these vaccines, which are referred to as Table injuries. § 300aa-14. Other injuries, including MS, are not listed in the Vaccine Injury Table and referred to as non-Table injuries. § 300aa-ll(c)(l)(C)(ii).
The Vaccine Act sets forth a statute of limitations:
In the case of ... a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset *1345 or of the significant aggravation of such injury.
§ 300aa-16(a)(2). The question in this case is whether the 36 month period commences where a petitioner experiences the first symptom of an injury, but where the medical community at large does not recognize that the symptom is related to a vaccine and the claimant has not received medical information suggesting such a connection. If so, Dr. Cloer’s appeal is time-barred because she experienced the first symptom of MS in 1997 but did not file her claim until 2005.
Dr. Cloer argues that her appeal cannot be time barred because the “first symptom or manifestation of onset,” for the purposes of § 300aa-16(a)(2), is “the first event objectively recognizable as a sign of vaccine injury by the medical profession at large.” See Markovich v. Sec’y of Heath and Human Servs., 477 F.3d 1353 (Fed.Cir.2007). Dr. Cloer interprets Markovich to mean that the medical community at large needs to recognize a link between the injury and the vaccine for the statute of limitations to begin running. We generally agree.
We begin with an analysis of Markovich, where this court considered the standard that should be applied in determining the date of “the occurrence of the first symptom or manifestation of onset....” Id. at 1356. The Markoviches’ daughter, Ashlyn, received a series of vaccinations on June 10, 2000, when she was approximately two months old. Id. at 1354. That same day, the Markoviches observed that Ashlyn began to rapidly blink her eyes, but they did not recognize that it was a first symptom of vaccine-related seizures. See id. On August 30, 2000, Ashlyn became unresponsive for about twenty minutes, during which time all of Ashlyn’s extremities jerked aggressively. Id. at 1354-35. Ash-lyn was treated at the Fairview Ridge Emergency Room, where she was diagnosed with having a grandmal seizure. Id. at 1355.
The Markoviches argued that the standard for the statute of limitations should be subjective and begin running on August 30, 2000, the date they became aware of an injury. Id. at 1356. This court disagreed, holding that an objective standard was consistent with the Vaccine Act language that the statute is triggered by the “first symptom or manifestation of onset.” Id. at 1358, 1360. The use of the words “first” and “or” require that the statute of limitations commence with whichever event (i.e., symptom or manifestation of onset) occurs first. Id. at 1358. Thus, this court held that the “ ‘first symptom or manifestation of onset,’ for the purposes of § 300aa-16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Id. at 1360. Because Ashlyn’s eye blinking episode was objectively recognizable by the medical profession at large as constituting the first evidence of vaccine injury onset, the statute of limitations began on that date. Id.
Markovich confirms that, under § 300aa-16(a)(2), in general, a symptom must be recognizable by the medical community at large as constituting a vaccine-related injury. As this court expressly held, the limitations period begins at the “first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” See id. (emphasis added). This holding also is consistent with the plain language of the statute of limitations, which specifically applies to injuries that are vaccine-related:
In the case of ... a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for com *1346 pensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.
§ 300aa-16(a)(2) (emphasis added). Thus, we hold that, in general, for the purposes of § 300aa-16(a)(2), to be “vaccine-related” the “first symptom or manifestation of onset or of the significant aggravation of such injury” cannot occur until the medical community at large objectively recognizes a link between the vaccine and the injury.
The government’s arguments to the contrary are unpersuasive. First, HHS argues that “Congress chose to start the running of the statute before many petitioners would be able to identify, with reasonable certainty, the nature of the injury.” See Markovich, 477 F.3d at 1358. However, as the preceding discussion demonstrates, the issue is not whether a petitioner subjectively recognizes an injuiy as vaccine-related, but rather whether the medical community at large objectively recognizes the injury as vaccine-related. Second, HHS argues that Dr. Cloer’s position would essentially “eviscerate” the limitations period provided in the Vaccine Act for most non-Table injuries. HHS alleges that, in many non-Table cases, the first time an injury is causally associated with a vaccine is well after the petition has been filed. Be that as it may, the relevant inquiry for determining when the limitations period begins to run is generally this: when does the medical community at large recognize that a vaccine is linked to an injury? That the statute of limitations may start running later for certain non-Table injuries does not “eviscerate” the statute of limitations.
The dissenting opinion argues that our interpretation of “vaccine-related injury” creates a substantial new hurdle for petitioners alleging non-Table injuries, suggesting that a claim could not be brought until the medical community had recognized a link between the vaccine and the injury. The dissent assumes that the time at which the right to bring suit for a non-Table injury accrues and the time of commencement of the limitations period are the same. They are not. The usual rule is that the right to bring suit and the commencement of the limitations period is the same, i.e., that the limitations period begins to run when the cause of action accrues. Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 418-19, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). But this presumption does not exist where statutory language is to the contrary. See id,.; Dodd v. U.S., 545 U.S. 353, 360-61, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005) (holding that the statutory language demonstrated that the limitations period and the petitioner’s right to bring suit did not commence at the same time). Here, significantly, the statute relating to non-Table injuries uses quite different language to denote the commencement of the limitations period than it uses to describe the proof required to establish the vaccine injury. The statute of limitations subsection provides, “No petition may be filed ... after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or the significant aggravation of such injury,” 42 U.S.C. § 300aa-16(a)(2) (emphasis added), whereas the non-Table proof of injury subsection provides, “A petition ... shall contain ... an affidavit, and supporting documentation, demonstrating that the person who suffered such injury ... sustained, or had significantly aggravated, any illness, disability, injury or condition ... which was caused by a Vaccine referred to in subparagraph (A)....” 42 U.S.C. § 300aa-ll(c)(l)(C)(ii)(I) (emphasis added). This difference in language is not inadvertent *1347 since in the statutory provisions relating to Table injuries, the right to bring suit depends on satisfying the “first symptom or manifestation” standard within the time period set forth in the Table.[1] Thus, for Table cases, which do not require causation, the “first symptom or manifestation” language is used in both the statute of limitations and proof of injury subsections. In contrast, for non-Table cases, the “first symptom or manifestation” language is only used in the statute of limitation subsection and the “cause[s]” language applies to the proof of injury subsection. This deliberate choice of different language shows that the time one can bring suit for a non-Table injury (and prevail)[2] is not the same as the time the limitations period begins. See Dodd, 545 U.S. at 361, 125 S.Ct. 2478.
The dissenting opinion would require that the statute of limitations begin running even if there was no known medical association between a vaccine and an injury. A petitioner who suffered a hypothetical injury in Year 1 would be required to file a petition within three years even if no one in the medical community knew of the association between the vaccine and the injury until Year 5. The general purpose of a statute of limitations is that a person should be diligent in pursuing her claim but, in this situation, it would be impossible for a petitioner — even if perfectly diligent — to know that she needed to file a claim. And if such a petitioner did bring a claim for her injury, it would probably be denied as she likely would be unable to prove causation-in-fact. Thus, the statute of limitations cannot begin to run when there is no medically recognized link between the vaccine and the injury.
Moreover, starting the running of the statute of limitations at the exact moment a person could prevail on a causation-in-fact claim would be unworkable. Causation-in-fact may be proven by medical opinion, such as medical testimony. See Althen v. Sec’y of Health & Human Servs., 418 F.3d 1274, 1279 (Fed.Cir.2005). Thus, a petitioner could be required to bring immediate suit simply because she theoretically might be able to find and hire a medical expert to testify to such a link. This depends on the possible ability of a petitioner to find a pioneering medical expert rather than the objective medical community standard. Also, at the time a claim under the Vaccine Act is filed, it is unclear whether a hired medical expert could, in fact, prove causation-in-fact because such a determination is not made until the special master or court conducts a hearing and makes a ruling. See § 300aa-13(a)(l)(A). This necessarily constitutes a merits-based inquiry that should not preclude the filing of a claim.
Our decision does not conflict with Brice v. Sec’y of Health & Human Servs., 240 F.3d 1367 (Fed.Cir.2001), because our holding is based upon the proper interpretation of § 300aa-16(a)(2). We do not need to equitably toll the limitations period *1348 to save Cloer’s complaint because § 300aa-16(a)(2) permits her claim since the limitations period, properly interpreted, never began. In addition, while Brice noted that Congress had intended that Vaccine Act claims be resolved “as expeditiously as possible,” this statement was in the broader context of replacing a traditional tort system that “was inadequate to compensate many who were injured by vaccines.” See id. at 1368-69. As this court stated in Brice, “Congress noted that opportunities of those injured by vaccines to seek redress under the traditional tort system were ‘limited, time-consuming, [and] expensive,’ and that for the injured, ‘mounting expenses must be met.’ ” Id. at 1368 (quoting H.R.Rep. No. 99-908, at 6, reprinted in 1986 U.S.C.C.A.N. at 6847). Congress intended that awards under the Vaccine Act be made “quickly, easily, and with certainty and generosity.” Id. at 1368-69 (quoting H.R.Rep. No. 99-908, at 3, reprinted in 1986 U.S.C.C.A.N. at 6344). Thus, generosity and reliability to petitioners were as much emphases of Congress as speed. The dissenting opinion, however, would not resolve Vaccine Act petitions generously or with certainty, given that one who is injured would be expected to predict whether there would be a medical linkage between a symptom and a vaccine by a pioneering expert within the next three years. Nor does it encourage expeditious resolution of the claims because a perfectly diligent person would still not know to file a claim any earlier than when the medical community recognizes a link. Thus, Congress could not have intended to prevent petitioners in such a situation from filing claims.
The dissenting opinion also argues that the majority opinion is inconsistent with Markovich v. Sec’y of Health & Human Servs., 477 F.3d 1353 (Fed.Cir.2007). However, as discussed above, Markovich is factually distinguishable from the instant case and thus compelled a different result. In Markovich, there was no dispute that the petitioner suffered from seizures as a result of the administration of the vaccine. Id. at 1356. The first symptom that Ashlyn experienced, a rapid eye blinking episode, was not normal childhood behavior and would have at the very least raised the suspicions of medical professionals. See id. at 1360. The central dispute was whether the statute of limitations should be objective or subjective. See id. at 1356-57. The Markoviches argued that the standard should be subjective, based solely on the view of a particular parent. Id. at 1356. The government argued that the standard should be objective, based on the recognized standards of the medical community. Id. at 1357. We held that the standard necessarily focused on the recognized standards of the medical community and apply that same holding to the facts here.
Finally, the dissent points out that in Wilkerson, we stated that “[w]e do not read Markovich as requiring in each case a showing of the date on which the medical profession at large has such a recognition.” Dissenting op. 1353 (quoting Wilkerson v. Sec’y of Dep’t of HHS, 593 F.3d 1343, 1346 (Fed.Cir.2001)). Consistent with Wilkerson, we do not suggest that general medical community recognition of a link is required in every case in order for the statute of limitations to begin running. Where a claimant has received a medical opinion or medical knowledge that symptoms suggest a possible link between the vaccine and the injury, such notice will also suffice to trigger the statute of limitations.
When Dr. Cloer first experienced symptoms in 1997, the medical community at large did not recognize a link between MS and her vaccine. Dr. Meyer, a recognized expert in neurology, testified that he was unfamiliar with any causal link be *1349 tween MS and a vaccine. HHS’s own brief also notes that “the medical community at large does not accept a causal association between the hepatitis B vaccine and multiple sclerosis.” Appellant’s Br. at 16 n. 4. In addition, the Vaccine Injury Table does not list MS as a vaccine-related injury. See §§ 300aa-ll(c)(l)(C)(ii), 300aa-14.
Based on the record before us, the earliest any member of the medical community alleged he recognized a link between MS and a vaccine was September 2004, when an article was published in Neurology. Thus, the medical community at large could not have objectively recognized Dr. Cloer’s symptoms as a vaccine injury any earlier than September 2004, if then. See Markovich, 477 F.3d at 1360. Usually more than one study or article is required. So too, in this case, at the earliest, Dr. Cloer (a medical professional) was put on notice about the possibility of a connection between MS and the vaccine due to the September 2004 Neurology article. As her petition was filed within 36 months of that time, the petition is timely.
Because Dr. Cloer filed her Vaccine Program petition on September 16, 2005, less than 36 months after September 2004, her petition is not time barred.
CONCLUSION
For the reasons provided above, the judgment of the Court of Federal Claims is

REVERSED AND REMANDED.

. See § 300aa-ll(c)(l)(C)(i) ("... sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table in association with the vaccine referred to in subparagraph (A) or died from the administration of such vaccine, and the first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury, or condition or the death occurred within the time period after vaccine administration set forth in the Vaccine Injury Table ....”) (emphasis added).

. § 300aa-l 1(c)(1) provides the requirements for a Vaccine Act petition. § 300aa-13(a)(1) states that compensation shall be awarded if the special master or court finds on the record as a whole that the petitioner has demonstrated by a preponderance of the evidence the matters required by § 300aa-l 1(c)(1). Thus, § 300aa-l 1(c)(1) lists the requirements for a successful petition at trial.