NEWMAN, Circuit Judge,
dissenting.
The court today holds that the statute of limitations starts to run before the fact or even the likelihood of vaccine-related injury is recognizable by medical professionals. Thus the court holds that behavior that the medical community did not associate with a vaccine-related injury and “may even be normal” can qualify as a “first symptom” of vaccine-related injury for purposes of commencement of the three-year limitations period of the Vaccine Act. The result is that in the case of Kit Carson the limitations period ended less than a year after the evolving combination of symptoms was recognized as a possible vaccine injury. The ostensibly tardy filing of Kit Carson’s claim occurred only two months after the end of the retrospectively-initiated three-year period. At a minimum, even on the court’s theory that the limitations period started before any injury was recognized, equitable tolling should be available in such circumstances. Fairness and common sense demand no less.
It cannot have been the legislative intent that Vaccine Act compensation is available on the first appearance of a “symptom” that “may even be normal.” Neither can it have been the legislative intent that the period of limitations starts to accrue during a period of normal behavior or unresolved symptoms of unknown significance. Yet my colleagues so hold, on their retrospective finding that Kit Carson’s symptom of delay in speech indicated autism, although that diagnosis was rejected by an impressive number of professionals.
It cannot reasonably be argued that Kit could have claimed vaccine injury compensation during that initial period of delayed speech, which was viewed at the time as *1371 reasonably-normal development.[1] A limitations period cannot start to run before the existence of the cause of action that it limits.
I
The facts are not in dispute. By the age of twelve months, Kit had received a schedule of vaccines that included Hepatitis B, DTP-Hib, OPV, H-Flu B, DTaP, MMR and Varicella vaccines. Kit’s developmental milestones were within normal parameters for his four, six, nine and twelve-month pediatric well-child visits. On December 1, 1997, at the eighteen-month visit, the pediatrician recorded that Kit was “[b]ehind in speech.” At the two-year visit on June 16, 1998 the pediatrician recorded that Kit was “speech delayed.” At Kit’s three-year visit, on May 25, 1999, the pediatrician observed Kit to have “Severe language delay — Expressive.”
In September 1999 Kit was evaluated as part of an Individualized Education Program, and the psychologist observed that Kit “interacts with toys and uses imaginative play with rolling toys, but does not attend to me or interact with me unless it is to get him something he wants.” The psychologist wrote that Kit “appears to have well developed fíne motor manipulative skills” but that “language delays are considerable and pervasive.”
On May 3, 2000 Kit was examined again by his pediatrician, who concluded: “Expressive language delay, no other dx appropriate.” On October 80, 2000 Kit underwent a battery of neurological tests including an EEG, MRI, and brainstem auditory test. All test results were within normal parameters. The examining neurologist wrote: “He is alert, very interactive and generally pleasant, and spent much of the examination playing with several plastic toys.” The neurologist concluded that Kit was “best classified at this time as pervasive developmental delay affecting primarily speech and language. He does not appear to meet criteria for autism.” The neurologist also stated that Kit “has had extensive laboratory evaluation and little more is warranted at this time.” On December 11, 2000 Kit underwent genetic testing, which concluded that “chromosome morphology appeared normal.”
From June 21 to July 21, 2000 Kit underwent a series of evaluations at the University of North Carolina. The evaluations included a behavioral rating scale designed to identify children with autism, the Childhood Autism Rating Scale, and a developmental test designed specifically for autistic and communication handicapped children, the Psychoeducational Profile Revised. The clinic determined that the tests were inconclusive, but indicated a need for further assessment as “Kit demonstrated a number of behaviors often observed in children with autism spectrum disorder.” On April 23, 2001, the Clinical Supervisor conducted a followup evaluation and concluded, on April 26, 2001, that Kit “demonstrates a pattern of behavior consistent with a diagnosis of mild autism.” This Vaccine Act petition was filed on July 22, 2002.
II
The court rules that the three-year period of limitations started to run by May 25, 1999, before possible autism was mentioned by any medical professional — and therefore that the petition became time-barred after May 25, 2002.
*1372 The first diagnosis of Kit Carson’s autism was in April 2001. Thus the court interprets the statute that provides a three year limitation period for filing a claim for vaccine injury, to include the period during which Kit’s autism was not recognized or was rejected by a battery of medical professionals.
My colleagues cite irrelevant precedent that the start of the limitations period is unaffected by diagnostic delay by “lay persons” who do not appreciate a symptom’s medical significance. Here Kit received extensive and continuing evaluations by specialists, yet the likelihood of autism was not diagnosed by any medical or pediatric professional. Kit’s early speech delay was not recognized as a manifestation of autism until after the occurrence of additional symptoms.
The court holds that the relation of the date of a first undiagnosed symptom to the date at which that symptom could be recognized as a sign of autism is irrelevant to the commencement of the limitations period, citing Markovich v. Sec’y of Health & Human Servs., 477 F.3d 1353 (Fed.Cir.2007). In Markovich this court stated: “A symptom may be indicative of a variety of conditions or ailments, and it may be difficult for lay persons to appreciate the medical significance of a symptom with regard to a particular injury.” Id. at 1357. The court stated that “a petitioner typically will recognize that a particular symptom constitutes the first symptom or manifestation of the onset of a certain injury only with the benefit of hindsight, after a doctor makes a definitive diagnosis of the injury.” Id. at 1358.
The court held in Markovich that the failure of lay persons (such as parents) to recognize a symptom of vaccine injury does not avoid commencement of the limitations period when the symptom is recognizable by professionals as vaccine injury. The court held that “ ‘the first symptom or manifestation of onset,’ for the purposes of § 300aa-16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Id. at 1360.
In Markovich the infant’s eye-blinking seizures that occurred on the day the vaccines were administered were “objectively recognizable by the medical profession at large” as constituting evidence of vaccine injury. Markovich did not hold, as does the panel majority herein, that when medical professionals did not recognize vaccine-related symptoms and rejected the diagnosis of the affliction, the parents are nonetheless charged with knowledge of existence of the affliction for statute of limitations purposes.
In Cloer v. Sec’y of Health and Human Services, 654 F.3d 1322 (Fed.Cir.2011) (en banc) this court held that “the statute’s limitations period begins to run on the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner.” Id. at 1324-25: The court stated that the first symptom or manifestation for limitations purposes must be of a “vaccine-related injury recognized as such by the medical profession at large.” Id. Such medical recognition did not exist with Kit Carson’s early manifestation of speech delay.
The difficulty in recognizing autism’s “first symptom” was acknowledged by the Court of Federal Claims in Setnes v. United States, 57 Fed.Cl. 175 (Fed.Cl.2003): “As distinguished from other medical conditions ... the beginning stage of autism cannot be reduced to a single, identifiable symptom. Many of the initial ‘symptoms’ are subtle and can easily be confused with typical child behavior.” Id. at 179. All of the medical witnesses agreed that delayed speech alone is not generally ’ viewed or *1373 recognized by the medical profession as indicative of autism. Expert witness Dr. Mumper testified that autism diagnosis requires more than speech delay:
Q. Okay. Does [expressive speech delay] match the particular diagnosis for autism?
A. Well, that one criteria’s consistent with the diagnosis of autism. But in order to have autism, you can’t just have that one symptom. You have to have impairment in social reciprocity as well as repetitive and stereotype behaviors ....
Q. Would a particular physician or psychiatrist or pediatrician know from an expressive speech delay symptom that this particular child had autism?
A. No, I don’t think so. And I think this is a crucial issue because speech delay has about a dozen things that can be caused. And I mentioned that it’s a very common complaint that we deal with.
Dr. Mumper Test, at 16-17 (June 2, 2009).
It is undisputed that speech delay alone is not objectively recognizable by the medical community as a first symptom of autism. The Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (2000) requires, before a diagnosis of autism can be made, clinical criteria across three domains of social development, i.e. (1) qualitative impairment in social interaction, (2) qualitative impairment in communication, and (3) restricted repetitive and stereotyped patterns of behavior, interests, and activities.
Petitioners argue that since delayed speech is common, it can only be a “first symptom” of autism when accompanied by some other behavior that would lead medical professionals to consider autism as a possible diagnosis. Petitioners argue that this accompanying abnormal behavior occurred in September 1999 when Kit’s Individualized Education Program evaluation showed signs of social impairment, including a lack of interest in toys.
Hindsight is not properly invoked to retrospectively make “objectively recognizable” what the medical community did not recognize and could not recognize, other than retrospectively. Such hindsight analysis does not retrospectively start the period of limitations. Only after Kit’s autism was diagnosed — after several years of progression — could the medical profession retrospectively classify his early speech delay as a symptom of autism. However, at the time that the court starts the limitations period for Kit Carson, the medical evidence was undisputed that Kit’s autism was not objectively recognizable by medical professionals.
The panel majority relies on Wilkerson v. Sec’y of Health & Human Servs., 593 F.3d 1343 (Fed.Cir.2010) for the proposition that retrospective diagnosis can retrospectively start the limitations period. However, in that case the medical experts agreed that the Attention Deficit Hyperactivity Disorder symptoms were objectively recognizable. In contrast, here the medical experts agreed that delayed speech is often normal and is not objectively recognizable as a sign of possible vaccine injury unless accompanied by other abnormal behavior. There was no testimony, by any of the medical experts, that Kit’s speech delay alone was objectively recognizable as indicative of autism.
The question is whether medical specialists could have recognized that Kit was manifesting autism at the time when the panel majority starts the period of limitations. Dr. Mumper agreed that speech delay “can be a symptom of autism” but she did not “concede,” as the panel majority states, that Kit’s autism could have been objectively recognized upon his manifesta *1374 tion of speech delay. As discussed ante, Dr. Mumper, like all the expert witnesses, testified that speech delay can be normal development, and that autism requires additional impairment.
The panel majority bases its determination of autism on the “first symptom” that the medical community rejected, and, having made this retrospective judicial diagnosis, concludes that it was known from the start that Kit was afflicted with autism. The Special Master did not so hold. Rather, with hindsight knowledge that Kit was eventually found to be afflicted with autism, the Special Master recognized that Kit’s speech delay could have been a symptom of this autism. However, but for the eventual diagnosis based on additional manifestations, neither the medical experts nor this court could determine a “first symptom” of autism for purposes of the Vaccine Act’s statute of limitations. Unless accompanied by other behaviors, speech delay is not objectively recognizable as a vaccine injury.[2]
The panel majority incorrectly states that “the medical community would recognize speech delay as a symptom of autism.” Maj. Op. at 1369 n. 3. However, Kit was studied by a barrage of medical specialists, none of whom found that Kit’s delayed speech was indicative of autism, and who did not modify that diagnosis until other manifestations of autism appeared.[3] The court’s holding that delayed speech, without more, starts the statute of limitations, would be tenable only if delayed speech, without more, were a com-pensable vaccine injury. This is not the government’s position.
At a minimum, equitable tolling should be applied to this petition. Equitable tolling permits the petitioner to present the claim; it does not decide the merits of the claim.[4] The Court in Sebelius v. Cloer, — U.S. -, 133 S.Ct. 1886, 1892, 185 L.Ed.2d 1003 (2013) recognized that the limitations period of the Vaccine Act is subject to equitable tolling. From the ruling that Kit Carson’s claim started to accrue from a date at which no vaccine-based injury was objectively recognizable and no Vaccine Act claim could have been filed, and the court’s refusal to toll the limitations period on its view of that period, I respectfully dissent.

. For instance the "Einstein Syndrome" refers to speech delay in children having high intelligence and precocious analytical skills. See Thomas Sowell, The Einstein Syndrome: Bright Children Who Talk Late (Basic Books, 2001).

. In an addendum to her Medical Expert Opinion, filed February 17, 2009, Dr. Mum-per responded to the question "What is the first symptom, in retrospect, that would have suggested the diagnosis of autism?” and answered, "With the advantage of retrospective analysis of the records, some observations from IEP assessments conducted by Buncombe County School district in September and October 1999 may have indicated the first symptoms of autism.” Dr. Mumper also stated that "Even with a retrospective review of the medical records, it is documented that the doctor suspected nothing but speech delay as of May 2000.”

.We recognize that controversy exists as to the relation between vaccines and autism. See Cedillo v. Sec’y of Health & Human Servs., 617 F.3d 1328 (Fed.Cir.2010).