CLEVENGER, Circuit Judge,
dissenting.
Multiple sclerosis (“MS”) is a horrible disease. In many cases, the disease manifests itself slowly. A person can experience a symptom of MS in a passing manner; a mild symptom can come and go with no apparent lasting effect. Some medically-recognized symptoms of MS are common events for many people: fatigue, numbness, dizziness, weakness, impaired mobility. Such events arising after a hepatitis B vaccination may not hamper a person enough to cause a visit to a doctor, let alone persuade one to file a lawsuit, even though the symptoms could be identified by any competent doctor as symptoms of MS. Until severe and repetitive symptoms arise, a confirmed diagnosis of MS is difficult, and to this day, there is no medical consensus establishing a causal association between the hepatitis B vaccine and MS.[1]
In the past, persons suffering symptoms of demyelinating diseases have filed non-Table petitions, seeking to establish the required causal link between the hepatitis B vaccine and their disease.[2] Such cases *1350 were filed within three years of the first occurrence of a symptom or manifestation of onset of the demyelinating disease and those petitioners may have been successful. Dr. Cloer’s case, had it been timely, was not necessarily doomed to failure.
For petitioners suffering from non-Table injuries who fail to bring suit within three years of onset, the majority provides the best possible solution, especially with regard to diseases that initially present with mild symptoms, such as MS. Under the majority’s solution, the person suffering need not worry about the three-year statute of limitations in the Vaccine Act, unless there is consensus in the medical profession that the administered vaccine causes the adverse condition being experienced.[3] As there is no present medical consensus regarding almost all alleged non-Table injuries, injured persons can generally pick the time when they wish to bring their cases. For them, as for Dr. Cloer, the majority proposes that there is no applicable statute of limitations in the Vaccine Act.
As a matter of grace and perhaps public health policy, the majority has created a new statute of limitations for non-Table petitioners under the Vaccine Act. Neither I nor the majority have the slightest sense of whether this move is wise, but it is wrong as a matter of law, as I will now explain.
I
Dr. Melissa Cloer received her third and final hepatitis B vaccination on April 3, 1997. Before that time, she had no significant medical issues and enjoyed generally good health. About a month after her final vaccination, she began to experience numbness in her left forearm and hand. She also began to experience what she described as an “electric shock sensation” with “electric like sensations going down the center of her back to both feet with forward head flexion.” This sensation is known as Lhermitte sign, long recognized by the medical profession as a common symptom of MS. See Dorland’s Illustrated Medical Dictionary 1700 (30th ed.2003).[4]
In 1998, about a year after her final vaccination, Dr. Cloer sought treatment from Dr. Michael Andrew Meyer, an expert in the field of neurology with a specialty in MS. After an MRI examination, Dr. Meyer noted “probable early inactive non-progressive CNS [central nervous system] demyelination/MS,” although he explained that her situation did not meet “formal diagnostic criteria for clinically definite MS.” Even so, because the MRI revealed lesions on the white matter of her central nervous system, Dr. Meyer concluded that Dr. Cloer could have MS, Singular Sclerosis, Lyme Disease, and acute disseminating encephalomyelitis, along with other demyelinating processes. Before the Special Master, Dr. Meyer testified that “I think that the first MS related symptom was the [Lhermitte] phenomenon that she had in 1997.”
On May 6, 1999, Dr. Cloer received a neurological examination from Dr. Ted Co-lapinto. Dr. Colapinto noted Dr. Cloer’s medical history and recorded her complaints of numbness in her face, arms and legs, and her difficulty in walking. He concluded that Dr. Cloer’s symptoms likely represented a demyelinating disease, commenting that “[Dr. Cloer] is having waxing *1351 and waning neurological symptoms in multiple areas of her body. I fear that this may likely represent demyelinating disease.”
Notwithstanding the possibility that her vaccinations may have caused the symptoms of MS she displayed, Dr. Cloer did not file her petition for compensation for a vaccine injury until September 16, 2005, nearly two years after she received a definite diagnosis of MS in November 2003.[5]
Before the Chief Special Master, and then the Court of Federal Claims, Dr. Cloer did not challenge the uncontroverted evidence that she had suffered symptoms of MS, and likely the manifestation of onset of MS, recognizable as such by the medical profession, more than three years before the filing of her petition, thus time-barring her petition. Her primary argument to the Chief Special Master was that the statute of limitations should not begin to run until she received a “clinically definite” diagnosis of MS in 2003.
Relying on precedent of this court, the Chief Special Master rejected Dr. Cloer’s theory and held that the statute of limitations begins to run on the occurrence of the first symptom or manifestation of onset of the injury which the petitioner alleges has resulted from the vaccination. The Chief Special Master discussed at length our decision in Markovich v. Secretary of Health and Human Services, 477 F.3d 1353 (Fed.Cir.2007), quoting that “the terms of the Vaccine Act demonstrate that Congress intended the limitation period to commence to run prior to the time a petitioner has actual knowledge that the vaccine recipient suffered from an injury that could result in a viable cause of action under the Vaccine Act.” Cloer v. Sec’y of Health & Human Servs., 2008 WL 2275574, *5 (Fed.Cl.Sp.Mstr. May 15, 2008). The Chief Special Master expressly dismissed Dr. Cloer’s argument that a “clinically definite” diagnosis is required by Markovich:
Petitioner misreads Markovich. The Court’s holding was that for purposes of § 300aa-16(a)(2), “the first symptom or manifestation of onset” is the “first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Markovich, 477 F.3d at 1360. There is no requirement that the vaccine injury be diagnosed.
Id. at *9 (emphasis in original).
Just as before the Chief Special Master, Dr. Cloer focused her argument at the Court of Federal Claims on her failure to receive a “clinically definite” diagnosis of MS until 2003. In addition, Dr. Cloer argued to the court that “because the first set of symptoms may be premature for a definitive diagnosis of a disease, it cannot itself constitute a ‘vaccine injury.’ ”
The Court of Federal Claims rejected Dr. Cloer’s theory that a “vaccine-related injury” cannot arise until the time when a causal link is shown between the claimed injury and the administration of a vaccine. Initially, the court noted that Dr. Cloer’s statutory argument was essentially the same as her main argument requiring a “clinically definite” diagnosis, but merely masked within an issue of defining the *1352 statutory term “vaccine-related injury.” Cloer v. Sec’y of Health and Human Servs., 85 Fed.Cl. 141, 149 (2008). The court pointed out that deferring the statute of limitations until after recognition that the vaccine causes the alleged vaccine injury necessarily requires the alleged vaccine injury to be definitively diagnosed prior to the triggering of the statute. Id. The court ruled that. Dr. Cloer’s argument is “contrary to Markovich, which held that the limitations period begins to run at the first occurrence of a symptom even though an exact diagnosis may be impossible until some future date when more symptoms or medical data are forthcoming.” Id. The court concluded that “[t]he Federal Circuit was very clear that diagnosis is not the test for the purposes of the statute of limitations.” Id.
On appeal, Dr. Cloer renews her statutory interpretation theory. She maintains that no “vaccine-related injury” arises, for purposes of having a cause of action under the Vaccine Act, and for triggering its statute of limitations, until the medical community at large confirms a causal relationship between the injury and the administration of a vaccine. She cites this court’s opinion in Markovich for support.
II
The Vaccine Act requires injured parties to file petitions within 36 months of the first symptom or manifestation of onset of the vaccine-related injury regardless of whether the petitioner is aware that the vaccine caused the injury. The “vaccine-related injury” is the injury that the petitioner alleges was caused by the vaccine.
In Brice v. Secretary of Health and Human Services, 240 F.3d 1367 (Fed.Cir.2001), this court buttressed its conclusion that the Vaccine Act’s statute of limitations permits no equitable tolling as follows:
In addition, we note that the statute of limitations [under the Act] begins to run upon the first symptom or manifestation of the onset of injury, even if the petitioner would not have known at that time that the vaccine had caused an injury. It would have been quite odd for Congress to allow a limitations period to run in cases in which a petitioner has no reason to know that a vaccine recipient has suffered an injury, but to provide for equitable tolling when a petitioner is aware that a vaccine has caused an injury but has delayed in filing suit.
240 F.3d at 1373. Brice thus holds that the statute of limitations is triggered by the first symptom or manifestation of onset of the injury, even without a known connection between the symptom and the vaccine in question, and, moreover, holds that Congress intended this result. Further, we recognized in Brice that the statute of limitations is a condition on the waiver of sovereign immunity, and that the waiver cannot be broader than “that which Congress intended.” Id. at 1370.
In Markovich v. Secretary of Health and Human Services, 477 F.3d 1353 (Fed.Cir.2007), the plaintiff argued that eye blinking episodes were not enough to trigger the statute of limitations because “the eye blinking symptom could not reasonably alert the Markoviches that anything was wrong.” 477 F.3d at 1357. Rejecting the argument that “the standard for statute of limitations purposes should be a subjective one, focusing on the particular view of a specific parent,” id. at 1356, the court instead found that “[a]n objective standard is consistent with the statutory requirement that the first symptom or manifestation of onset of the injury begins the running of the statute of limitations.” Id. at 1360 (emphasis omitted). Thus, “the first symptom or manifestation of onset, for the purposes of § 300aa-16(a)(2), is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Id. The court in *1353 Markovich did not require an objectively recognized causal link between the vaccine and the injury. In a nutshell, the dispute in Markovich only concerned recognition of the symptom or manifestation as related to the injury claimed. We held that the statute of limitations begins to run upon the occurrence of the first symptom or manifestation recognized by the medical profession at large as a symptom or manifestation of the injury claimed, in this case, MS. We expressly rejected any notion that the statute of limitations would start to run when a petitioner had reason to believe the vaccine had caused the injury.
When Brice and Markovich are read in tandem, the law is clear. “[T]he Vaccine Act’s statute of limitations must be strictly and narrowly construed because it is ‘a condition on the waiver of sovereign immunity by the United States and courts should be careful not to interpret [a waiver] in a manner that would extend the waiver beyond that which Congress intended.’” Markovich, 477 F.3d at 1360 (quoting Brice, 240 F.3d at 1370). Thus, though the eye blinking in Markovich was “a symptom of a seizure disorder without any diagnosis,” id. at 1357, it “was objectively recognized by the medical profession at large as constituting the first evidence of vaccine injury onset, i.e., the first symptom” of the seizure disorder suffered by the petitioner. Id. at 1360. It did not matter that the eye blinking was not recognized as being causally linked to administration of a vaccine. Id. It only mattered that the eye blinking episodes were “connected to the injury of seizure disorder within ample time to have filed a timely claim.” Id. at 1359. The court found the petition time-barred under section 300aa-16(a)(2). Id.
The court recently reaffirmed that Mar-kovich keys to medical recognition of a link between the symptom and the injury claimed, not to medical recognition of a causal link between the injury and administration of a vaccine. See Wilkerson v. Sec’y of Dept. of Health and Human Servs., 593 F.3d 1343, 1345-46 (Fed.Cir.2010). In Wilkerson, the petitioner argued that the court’s holding in Markovich that the statute of limitations triggers upon “the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large” requires a contemporaneous recognition in the medical community that the symptom is linked to the alleged vaccine injury. Id. at 1345. This, of course, is the same argument Dr. Cloer makes in this appeal. The court flatly rejected Wilkerson’s argument and stated that:
That statement in Markovich, however, was made to explain the court’s rejection of a subjective standard for determining when the limitations period began to run based on the parent’s perception of when that occurred, and adopting instead an objective standard based on the medical profession’s recognition of when that occurred. We do not read Markovich as requiring in each case a showing of the date on which the medical profession at large had such a recognition.
Id. at 1345-46. Notwithstanding Wilkerson, the majority wants to interpret the same statement in Markovich as holding that Markovich requires a contemporaneous recognition in the medical community of a link between the vaccine and the injury. To do so, the court simply ignores the holding in Wilkerson that “the Act’s time for filing runs from ‘the date of the occurrence of the first symptom or manifestation of onset,’ not the date of its recognition.” Id. at 1346.
Under the court’s precedent, the Vaccine Act’s statute of limitations starts running upon occurrence of the first symptom or manifestation of the alleged injury that *1354 is objectively recognized by the medical community as a symptom of the injury for which the petitioner seeks compensation. Putting this case into the correct Marko-vich analysis, the first objectively recognizable symptom of Dr. Cloer’s MS by the medical profession at large was her Lher-mitte sign in 1997. As correctly found by the Chief Special Master and the Court of Federal Claims, the statute of limitations began running on Dr. Cloer’s Vaccine Program claim in 1997.
III
The Supreme Court has “repeatedly recognized” that “Congress generally drafts statutes of limitations to begin when the cause of action accrues.” Graham County Soil & Water Conservation Dist. v. United States, 545 U.S. 409, 418, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). Indeed, the Supreme Court has refused to permit “the odd result” that a federal cause of action and statute of limitations arise at different times, “in the absence of any such indication in the statute.” Reiter v. Cooper, 507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). In Graham County, the Supreme Court was faced with a statutory scheme in which the relevant statute of limitations was subject to two plausible constructions. 545 U.S. at 419, 125 S.Ct. 2444. The Supreme Court held that when differing but plausible constructions are possible, “we should adopt the construction that starts the time limit running when the cause of action [ ] accrues.” Id.
In Dodd v. United States, decided the same day as Graham County, the Supreme Court was confronted with the one-year statute of limitations imposed by Congress on habeas corpus petitions based on rights newly recognized by Supreme Court decisions. 545 U.S. 353, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005). The statutory language provided that the one-year period began to run on “the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.” Id. at 356-57, 125 S.Ct. 2478 (quoting 28 U.S.C. § 2255 ¶ 6(3)). The Supreme Court held that the only natural reading of the statutory limitations period was for it to trigger upon the issuance of the decision initially recognizing the right in question. Id. at 357-58, 125 S.Ct. 2478. Because the Supreme Court rarely determines retroactivity in its decisions initially recognizing a right, the Court acknowledged that when retroactivity is established more than one year after initial recognition of the right, the limitations period expires for petitioners before the cause of action accrues. Id. at 358-59, 125 S.Ct. 2478. The Supreme Court held, however, that the general rule that a cause of action accrues at the same time the limitations period begins could be disregarded because Congress expressly and unambiguously provided for a different result. Id. at 359-60, 125 S.Ct. 2478. The majority contends, wrongly I think, that Congress made a “deliberate choice” in the Vaccine Act to allow the cause of action for petitioners alleging non-Table injuries to accrue long before the statute of limitations begins to run, but to leave the general rule in force for petitioners alleging Table injuries.
IV
Under the Vaccine Act, there are two types of petitions, both of which are defined in the section of the Act titled “Petitions for Compensation.” See 42 U.S.C. § 300aa-ll. A person sustaining any “vaccine-related injury” must allege in them petition that they received a vaccine set forth in the Vaccine Injury Table. See 42 U.S.C. § 300aa-ll(c). For harms already recognized by the medical community, the Vaccine Act identifies the injuries commonly associated with each vaccine in *1355 the Vaccine Injury Table. See 42 U.S.C. § 300aa-14. If the alleged injury is listed in the Vaccine Injury Table then the petitioner can file a Table petition; otherwise the petitioner must file a non-Table petition.
A petitioner filing a Table petition must allege that he sustained, or significantly aggravated, an illness, disability, injury or condition set forth in the Vaccine Injury Table. See 42 U.S.C. § 300aa-ll(c). The petitioner must also allege that the first symptom or manifestation of any such illness, disability, injury, or condition occurred within the time period after vaccine administration set forth in the Vaccine Injury Table. Id. These Table Injuries arise from an adequate consensus in the medical profession that a particular vaccine causes certain injuries. After a vaccine has been found often enough to have caused defined injuries with defined symptoms and manifestations occurring at defined times after vaccination, a Vaccine Injury Table entry is created. A petitioner seeking relief for any such injury no longer is required to allege that the vaccine caused the injury. A presumption of causation lies at the heart of Table Injury cases.
The Act also provides recovery for “non-Table” vaccine-related injuries. The required elements of a non-Table petition of course differ from the elements of a Table Injury petition. With regard to the “vaccine-related injury,” a non-Table petitioner must allege that he “sustained, or had significantly aggravated, any illness, disability, injury, or condition not set forth in the Vaccine Injury Table but which was caused by a vaccine....” 42 U.S.C. § 300aa-ll(c). A non-Table petitioner must aver and demonstrate that a vaccine has caused the vaccine-related injury for which he seeks compensation.
In sum, the Act creates a cause of action for persons suffering a “vaccine-related injury.” See 42 U.S.C. § 300aa-ll(a). The Act specifies the required contents of the petition for compensation. 42 U.S.C. § 300aa-ll(c). For injuries listed in the Vaccine Injury Table the petitioner merely identifies his vaccine and alleged injury and benefits from a presumption of cause, but the Act leaves it to the non-Table petitioner to specify his own vaccine-related injury and to shoulder the burden of proof of causation. Id.
The Act contains a single statute of limitations for all persons suffering a “vaccine-related injury,” regardless of whether they file Table or non-Table petitions. See 42 U.S.C. § 300aa-16(a)(2). The limitations statute applies “if a vaccine-related injury occurred as a result of the administration of [a] vaccine.” Id. The phrase “occurred as a result of’ necessarily refers to causation; presumptive causation in the instance of a Table Injury and alleged causation in non-Table petitions. In either instance, the petition must be filed within three years of “the date of the occurrence of the first symptom or manifestation of onset” of the claimed vaccine-i*elated injury. Id.
For both Table and non-Table petitioners, the “occurrence of the first symptom or manifestation of onset” is a date on a calendar when an event occurred. In Table cases, the symptoms or manifestations of onset, and the timeframe during which the symptoms or manifestations must have occurred, are defined with specificity in the Table. See 42 U.S.C. § 300aa-14. For non-Table cases, the first symptom or manifestation of onset, under our precedent, requires consensus in the medical community that the symptom or manifestation reflects the specific injury claimed to have been caused by the vaccine. See Markovich, 477 F.3d at 1360. The cause of action accrues, in both cases, upon the calendar date of the first symptom or manifestation, and the law requires the statute *1356 of limitations to begin to run on the same calendar date.
V
In light of the clear and binding precedent and the text of the Vaccine Act, the reader is surely asking how Dr. Cloer could possibly prevail. The answer lies in two steps taken by the majority. First the majority proposes: “Dr. Cloer interprets Markovich to mean that the medical community at large needs to recognize a link between the injury and the vaccine for the statute of limitations to begin running. We generally agree.” See Maj. Op. at 1345. As our recent decision in Wilkerson confirms, the majority and Dr. Cloer misread Markovich. As explained above, Markovich holds that the statute of limitations cannot run from just any symptom or manifestation; the triggering symptom or manifestation has to be one that the medical community at large recognizes as a sign of the claimed injury. Markovich does not help the majority because, under our precedent, the statute of limitations begins to run before the medical profession at large concludes that the vaccine has caused the injury claimed; the lack of consensus exists in nearly every non-Table case ever brought before this court. In short, under our precedent, specifically Brice, Markovich, and Wilkerson, Dr. Cloer cannot prevail.
Second, the majority is forced to confront the general rule that a statute of limitations begins to run at the same time the cause of action arises because the term “vaccine-related injury” appears throughout the Vaccine Act. It appears in the provisions creating the cause of action and specifying the statute of limitations. A petitioner cannot file a petition seeking relief under the Act unless a “vaccine-related injury” has occurred, see 42 U.S.C. § 300aa-ll(a)(l), and the statute of limitations begins to run three years after “the date of the occurrence of the first symptom or manifestation of onset ... of such [vaccine-related] injury.” See 42 U.S.C. § 300aa-16(a)(2). Because the majority defines a “vaccine-related injury” for purposes of the statute of limitations to mean “an injury that is causally connected by medical consensus to the vaccine in question,” it necessarily understands that it can be criticized for erecting a bar that prevents petitioners (including Dr. Cloer) from filing causation-in-fact Vaccine Act petitions until such a time as there is consensus in the medical profession that the vaccine has caused the injury claimed. This would be so because if there is no “vaccine-related injury” without medical consensus on causation for statute of limitations purposes, see 42 U.S.C. § 300aa-16(a)(2), there can also be no “vaccine-related injury” for a cause of action until the medical consensus is formed, see 42 U.S.C. § 300aa-ll(a)(l).
The majority, however, appreciates the effect of the general rule, which would bar the public from filing non-Table petitions until after a medical consensus states that a vaccine causes a particular injury. To avoid the general rule, the majority separates the time of accrual of non-Table causes of action from the time on which the statute of limitations begins to run for such cases. In short, the majority dictates that the general rule which links accrual with initiation of the statute of limitations applies for Table Injury petitions, but does not apply to non-Table petitions. As a practical matter, there no longer will be any statute of limitations for non-Table petitions, as they by definition allege injuries that the Secretary has not added to the Vaccine Injury Table due to a lack of consensus on causation. As a legal matter, this ignores the plain language of the statute that creates a single cause of action for both Table and non-Table petitions. See 42 U.S.C. § 300aa-ll(a)(l).
*1357 The majority seeks to justify its bifurcation by pointing out that, for Table petitions, the requirements include pleading the occurrence of a first symptom or manifestation of a defined vaccine injury within the Table-specified time, and the Vaccine Act statute of limitations uses the same language to trigger the running of the three-year period for bringing Vaccine Program claims. The majority then points out that the requirements for non-Table petitions, though arising under the same cause of action, do not mention “first symptom or manifestation” and instead require a petitioner to plead that the vaccine caused the claimed injury. This “deliberate choice” of different language for the contents of Table and non-Table petitions, according to the majority, proves beyond question that Congress intended to produce the “odd result” that for non-Table petitioners the cause of action can arise before the statute of limitations begins to run, and that, in fact, there may not even be a statute of limitations for most non-Table cases as the alleged injuries may never be objectively recognized as caused by the vaccine.
Notably, there is no evidence whatsoever in the legislative history of the Act that Congress made a “deliberate choice” of different language in the petition requirements in order to reject the normal rule that a cause of action arises at the same time the statute of limitations begins to run. The difference in language is required because the Vaccine Injury Table only contains injuries that the medical community has concluded are likely to be caused by certain vaccines. Thus, petitioners alleging a Table Injury must comply with the requirements of the Vaccine Injury Table, and the statute of limitations runs from the defined time of the relevant symptom or manifestation listed in the Table. See 42 U.S.C. § 300aa-14. For non-Table injuries, there are no such medically agreed-upon symptoms or manifestations that appear within a defined timeframe after administration of the vaccine. Because Congress provided a single limitations period to run for all vaccine cases from the date of the first symptom or manifestation, see 42 U.S.C. § 300aa-16(a)(2), Congress left it to petitioners alleging non-Table injuries to prove when their first symptom or manifestation of onset occurred. Our ease law has defined that date to require that the symptom or manifestation of onset be recognized by the medical profession as a symptom or manifestation of the injury claimed.
The Vaccine Act does not express a “deliberate choice” by Congress to enforce the statute of limitations for Table Injury petitioners, but indefinitely suspend or eliminate it for non-Table petitioners. Nor does the Vaccine Act present more than one interpretation of how its single statute of limitations works. There is simply no statutory support for the majority’s reasoning that the single statute of limitations in the Vaccine Act somehow applies differently to petitioners depending on whether they allege Table or non-Table injuries.
The majority is plainly wrong to read the same statutory language to have two quite different meanings. Only by refusal to abide by our precedent (Markovich and Wilkerson), by misapplication of Supreme Court law (Dodd), and by creating two definitions for a single statutory term, can the majority save Dr. Cloer from the expired statute of limitations.
VI
The majority conditions its “general rule” (that the statute of limitations does not run until a medical consensus recognizes a causal link between a vaccine and an injury) with what seems to be an afterthought. The condition is that, even if there is no medical consensus on causation, the statute of limitations may begin to run *1358 if a person has reason to believe that a vaccine caused the injury claimed.
Here, the majority stubs its toe over Markovich for the second time. If Markovich makes nothing else clear, it surely teaches that subjective considerations have no place in determining when the statute of limitations in the Vaccine Act begins to run.
The majority’s add-on test is full of subjective issues: what did the would-be petitioner understand, and from where, and what was the basis for the supposed linking information, and would a reasonable person have so interpreted the information when other similarly situated persons understood the information differently? The only objective thing about the add-on test is that it triggers the statute of limitations on the date when the “medical information” is received. But under Markovich, the trigger date has to be the date upon which a symptom or manifestation occurred. Under the add-on test, Markovich’s, trigger is eviscerated.
Further, the add-on test ignores (and overrides) the plain holding in Brice that the statute of limitations begins to run before a petitioner suspects a causal link between a vaccine and the injury claimed. Instead, the majority’s add-on test triggers the statute of limitations on the date that the petitioner first suspects a causal link.
Enough said. I need not belabor the wrongness of the majority’s bewildering exception test for starting the statute of limitation on non-Table petitioners. I might add, as a possible explanatory note to the readers, that Ms. Cloer did not present the majority’s exception theory below, nor in the briefs or at oral argument here. Ms. Cloer argued only that the statute should not begin to run until the medical community arrived at a consensus causally linking the hepatitis B vaccine to MS. The illogic of her position and the chaos it would cause for bringing non-Table cases are evident, given the rule that a cause of action accrues and the statute of limitations begins to run at the same time. The majority overcomes Dr. Cloer’s flawed argument first by refusing to follow Brice, Markovich and Wilkerson and by misapplying Dodd, and finally by trying to limit the damage done by its general rule by hiving onto it a subjective condition.
VII
The law of this circuit is clear: the statute of limitations in the Vaccine Program begins to run upon the first symptom or manifestation of a claimed vaccine injury, where that symptom or manifestation is recognized by the medical profession as a symptom or manifestation of the injury claimed. Requiring consensus in the medical profession that there is a causal link between the vaccine in question and the non-Table injury claimed has no place in the Vaccine Act. Such consensus arises, inter alia, from successfully litigated non-Table petitions.
A rule that the statute of limitations cannot begin to run for petitioners alleging non-Table injuries until medical consensus of a causal link arises creates havoc with the public’s opportunity to file non-Table cases. Congress did not make a deliberate choice to bifurcate the Vaccine Act’s non-Table petition requirements from the statute of limitations, and Congress surely could not have intended to so limit the availability of non-Table injury petitions as with the majority’s definition of “vaccine-related injury.”
To be correct, the court should define “vaccine-related injury” in the Vaccine Act to mean “the injury claimed by a petitioner to have been caused by administration of a vaccine.” This matches the plain language of the Act and the general rule requiring Vaccine Program causes of action to accrue on the same date that the statute of *1359 limitations begins to run. This date is defined as the date of occurrence of the first symptom or manifestation of onset of the injury claimed, recognized as such by the medical profession. Under the correct test, Dr. Cloer’s petition is time-barred.
For the foregoing reasons, I would affirm, and thus respectfully dissent.

. See Immunization Safety Review: Hepatitis B Vaccine and Demyelinating Neurological Disorders 1, 8 (Kathleen Stratton et al. eds., The National Academies Press 2002).

. Due to the large number of related non-Table petitions, the Office of Special Masters created a Hepatitis B-Neurological Demyeli-nating Omnibus Proceeding to determine if the hepatitis B vaccine can cause demyelinat-ing diseases. In four paradigm cases, Special Masters found that petitioners successfully demonstrated a causal link between the hepatitis B vaccine and demyelinating diseases even though no such causal link was objectively recognized by the medical profession. See Peugh v. Sec’y of Health and Human Servs., No. 99-638V, 2007 WL 1531666 (Fed.Cl.Spec.Mstr. May 8, 2007) (hepatitis B vaccine caused Guillain-Barre Syndrome); Werderitsh v. Sec'y of Health and Human Servs., No. 99-310V, 2006 WL 1672884 (Fed.Cl.Spec.Mstr. May 26, 2006) (hepatitis B vaccine caused MS); Gilbert v. Sec’y of Health and Human Servs., No. 04-455V, 2006 WL 1006612 (Fed.Cl.Spec.Mstr. Mar. 30, 2006) (hepatitis B vaccine caused Guillain-Barre Syndrome and chronic inflammatory demyeli-nating polyneuropathy); Stevens v. Sec'y of Health and Human Servs., No. 99-594, 2006 WL 659525 (Fed.Cl.Spec.Mstr. Feb. 24, 2006) (hepatitis B vaccine caused transverse myelitis).

. This is the ''general” rule created by the majority. The majority's exception to its general rule is discussed in Part VI, infra.

. Lhermitte sign is defined as the development of sudden, transient, electric-like shocks spreading down the body when the patient flexes the head forward; seen mainly in MS but also in compression and other disorders of the cervical cord.

. As the majority notes, Dr. Cloer did not think there was a link between the hepatitis B vaccine and MS until she read an article in the September 2004 issue of Neurology. The article reported on a prospective study in France on the possibility of a causal connection between the hepatitis B vaccine and MS, referring to statistics from studies with "substantial methodologic limitations" showing an increased risk of MS after receipt of the hepatitis B vaccine. As the majority must concede, the prospective French study cannot constitute recognition by the medical community at large of a causal link between the hepatitis B vaccine and MS, and to suggest otherwise would be irresponsible. As noted above, the medical community at large denies any such link.